is, I'm not sure if I'm pronouncing it right, but Szygany-Beck v. Manhattan College. So, Mr. Doolittle, you have reserved two minutes for rebuttal. Just give me one second to rearrange pencils, and then we'll be ready to go. Alright, so you've got eight minutes out of the gate. Let me just make sure my colleagues are ready. Good morning, Your Honors. My name is Paul Doolittle. I'm from Charleston, South Carolina, and I have the privilege today to be here on behalf of the students of Manhattan College. Pardon me, sir? I get it. Go ahead. Here on behalf of the students of Manhattan College that were present during the spring of the semester of 2020 during the COVID cases. I know that Your Honor is familiar with these cases, and the court is familiar with the cases having recently decided the Renosco decision last year, as well as the Tappanekis decision that was rendered just last month. So this is the same type of case in the college. And one in between. And one in between as well, Judge. Exactly. Yeah, and the New York State courts haven't been asleep either. They've got cases too. These cases have been across the country, in fact, Judge, that's right. It's in the college refund context. As you know, these cases, these students were sent home during the spring of 2020 and basically got 46% of their semester done in person. 46% of their semester was done at home. So these students are asking for the difference in the value between the in-person education that they contracted for and what they signed up for and what they expected when they got to campus on the spring of 2020 versus what they got, which was a sent home to work from your laptop. No, I think we get the issue. I think the question is then, so Judge Stanton decided this case before Renosco, right? But in the interim now we have a New York State Intermediate Appellate Court that is kind of going the other way in Croce. And I guess my question is why do we not just state law issue? It's a state law issue in a context, Judge, in one sense. It is a state law issue. Well, if the New York Court of Appeals, I mean, I don't think Croce has been taken up by the New York Court of Appeals, but if the New York Court of Appeals were to basically endorse the view in Croce, wouldn't that resolve this case? It would, Your Honor, if they in fact did. But I don't think... Until that happens, are we bound by Renosco and Goldberg? I think you are bound by Renosco as the precedent before the court, which held that an implied contract, as we've argued here in our briefing and we argued in the lower court, an implied contract existed between the students and this college. And the implied contract is supported by the facts and the record by the historical context, as well as the statements. It seems to me Renosco, yeah, it's a remand. If Renosco is standing alone and we are bound to follow it, we can't go the other way. But is there anything that would prevent us from certifying the question? Nobody in Renosco asked to certify that question. Correct. Nobody in this... Do you think we lack authority to certify it here? Because there's an implied Renosco? Thank you, Judge. Just as in Renosco, there was no request, and there is no request before this court. Certainly, I guess to respond to it, the court can do whatever... I don't think even the panel... I don't think anybody talked about it in Renosco, I don't think. But certainly we don't need to wait for the parties to ask, but at least we're asking, or at least I'm asking here at the oral argument. I think it's proper for this court to decide, Judge. I mean, again, following your precedent that you've established in Renosco, I think it's clear here. I think it's clear what the court has held, and I think the law is clear on that regard. And I think that this court can rule in this matter, and consistent with the Renosco decision, consistent with the Tapenikus decision as well, and keep the context and the law flowing as it is. I don't think you have to send this anyplace else. I think you judges can decide this case on its facts as it sits today. And I think what we have here is... But it just seems weird that we've got different results then. If you're in federal court, you win, and if you're in state court, they win on the same issue of state law. And I don't want to overstate it. There might be different implied contracts with different facts that inform that. So I don't want to overstate it. But it does seem strange that on what is an issue of state law, we would be having different results in federal versus state court. Do you think that's anomalous, or is it not a problem? Judge, I don't see that they're completely different results. I think your case law in Renosco, I think you go through and outline exactly what an implied contract is. I don't think it's a complicated issue here. I think facts turn on each individual case, as you can see in Tapenikus case, we had a force majeure clause that the court found. We don't have one of those in this context. We don't have a force majeure clause at all as far as the tuition is concerned. Your fees presents a different question. And there it seems to be the case you've twice omitted mentioning, which is the Goldberg case, does control to your detriment. Absolutely. As to fees, Your Honor, it would control as to fees. But in this situation, unlike... And here it says the fees are non-refundable. Yes. Unlike Goldberg, this is a little bit different in the situation. What the school is saying is that we put this small non-refundable clause at the end of our when you pay is non-refundable, meaning you can't, basically what the historical context is, you can't decide not to go to school and get your fees back. You can't cancel and get your fees back. Small or large font. I don't know what matters, but non-refundable means non-refundable. You're seeking refund to the fees, right? Exactly. But in this context, Judge, what they're saying here, if you're reading the briefs of the defendants, if their position would be is that we didn't have to do anything. We can accept fees. And as long as we state non-refundable, we don't have to do anything for those fees. They are promised to provide the services that go with those fees, as outlined in the statement that I know Your Honor has read. We don't have to do any of those things. Their position is it's non-refundable. Once you pay it, we don't have to provide it. What else could non-refundable mean? Non-refundable means that you can't get it back if you decide to back out. Non-refundable doesn't mean that we get to decide that we're not going to provide you the services you paid for. That would just be an abomination of the law. Is there language that gives it the meaning that it's non-refundability only turns on what the student does? No, Your Honor. It's logic. Otherwise, you would have the school in an ability to split non-refundable at the end of everything, and then there's nothing anybody can do about anything. That's the funny thing about contracts, isn't it? Right. Absolutely. And it's within the school's purview to draft that contract. So just like in a force majeure sense for the tuition, which we don't have, you have a, I guess, almost a very, I don't even know if I can call it a force majeure. I would not call it a force majeure just because it says non-refundable. What they could have said, and we would not be here today because they're in charge of the contract. They could have drafted it any way they wanted. They could have said force majeure. Plain language. Capital. All bold. Even just the words force majeure. Or outline the statistics. The things that happened did cause or trigger a force majeure clause to take effect. They didn't do that in this case. They had the ability to do that. They were the ones that authored the contract. They had the ability to do that. And your position is that we shouldn't, that Reynosco doesn't resolve this case because in this case there is no such clause. That your case is more analogous to Goldberg. And you're relying on, just to be clear, you're relying on the basis of the implied contract. Not only are you relying on the absence of an emergency closure clause, you're also relying on the materials the college hands out about the hands-on experience in New York City, the experience of being in Manhattan on campus versus online training. Correct? Exactly, Judge. I mean in their brochures they don't just go through to say a few words about it. They say the world's greatest classroom, colon, New York City. Many colleges and universities, quotes, many colleges and universities in this region boast about their proximity to New York City, but in Manhattan College we offer a truly unique location. We are within the boundaries of New York City and our campus is next door to a subway stop. King of the hill, top of the heap. We get it. And just to be clear, my question, I'm distinguishing between the in-person tuition and fees. Correct. With respect, as I see it, the arguments you just made in response to my colleague's question is that on in-person tuition this is just like Gronosco. Correct. So it should go back. As far as the tuition, yes. On fees it seems to me the inclusion of the non-refundability language makes it like Goldberg in that sense. That is to say we have clear contractual language saying you don't get your money for fees back. That's correct. And if you can determine that if they don't have to provide anything and they can not give a refund at all, just take the fees and do nothing, then that would be the decision the court would have to render. You sound so agreeable, but I think you're disagreeing with the is that, yeah, yeah, the non-refundable language carries some freight, but it can't be a magic bullet if one contractual party just doesn't provide any services. They don't show up at all. That's correct, Your Honor. That's simply correct. And what's your best case for that? The Gronosco case and the Goldberg case itself I think actually outline that as well as Tapanakis that talks about an emergency closure provisions. I see my time has expired. Thank you very much. Okay. Well, you've got two minutes to rebuttal, Mr. Doolittle. We'll now hear from Mr. Fellows. Good morning, Your Honors. Jonathan Fellows, Bond Shanking King from Manhattan College. Judge Sullivan, I'd like to go right to your questions about Gronosco and in particular your observation that if Gronosco is controlling, we would remand or certify to the Court of Appeals. I disagree. In Gronosco, Your Honor, the split panel, two to one, said statements that... I don't think it matters that it's two to one, does it? I agree. I would commend you to read Judge Parker's dissent, but you are correct, Your Honor. He's the one a lot, so he's best at this. Your Honor, in Gronosco, the panel said statements that NYU made about New York City is a wonderful place and we have a great campus is enough to infer a promise of in-person instruction. That was half of what they held. But then they continued and said this complaint meets the requirements of an implied promise because in addition, the proposed complaint describes some of the particular ways in which suspension of in-person services dramatically altered the experience for which Hall Landers, as a student majoring in dance, had contracted. So that's an important part of why that panel held the complaint was sufficient. And what were those facts in the record, in the complaint in Gronosco that caused the panel to say that? Before the pandemic, Ms. Hall Landers, the student, spent three hours a day in the dance studio with hands-on instruction, immediate feedback. I get that there are factual distinctions and that you're pointing to them, but I guess I think the significant point is that Judge Stanton didn't have the benefit of Gronosco when he ruled on the motion to suspend in-person instruction. I mean, the way he did it was very different from the analysis that would be required by Gronosco. So why not send it back to him and let him sort of weigh these things and evaluate this? Do you think we should do it just in the first instance? Because it's a Rule 12 motion that this Court is equally capable of construing the complaint and determining whether the complaint contains sufficient facts to meet what the Gronosco panel said. And if you read this complaint, Judge, you will not find one fact in it about Ms. Beck's experience educationally following the transition to remote instruction. Not one fact. I ask you to go back... It doesn't say that she didn't dance at all. It doesn't say she didn't dance. It doesn't say what her major was. It doesn't say what courses she was in. It doesn't say I didn't get instruction. There's nothing. What about paragraph 68, I believe, of the complaint that says 12 to 1 student to faculty ratio and a catalog of courses that use New York City as a classroom? Your Honor, that goes to... That's not a fact that says it's the use of the campus in New York City? Your Honor, that goes to the first half of what the Gronosco panel said met the standard, which is NYU had sufficiently said New York is great. Come here for in-person. The other half of what Gronosco said, and I was reading directly from the panel's decision, is the complaint alleges how Ms. Hall-Landers lost out after the transition. The paragraph you're citing, Your Honor, doesn't say anything about what happened from March 15 when our client pivoted immediately to remote instruction with the same professors. And when you say student ratio, Your Honor, same student ratio because the same professors taught the same students through remote technology. So what I'm saying is lacking in this complaint is any educational program from March 10th to the conclusion of the term. There isn't one allegation. And in this case, in addition, when we move for summary judgment, she put in a declaration. Look at it. It's two pages. It says not one thing about her educational program from March 15th on. And I want to take... You're relying on Gronosco, but that case was different, right? They had an emergency closing force majeure clause that doesn't exist here. Is that something we should ignore? No, I'd ask you to reexamine the Gronosco decision because that panel clearly rejected that clause as a basis for NYU prevailing. So Judge Robinson's opinion said that doesn't work. In fact, what she said was it's not a force majeure clause, which the court said in Goldberg and said Pace's clause was a force majeure clause. In Gronosco, Judge Robinson said it's not a force majeure clause. And I want to respond to something Judge Nation said, which is aren't we bound by Gronosco? No. You are bound by Croci. And I would quote from this circuit in Pujuta v. Massey-Ferguson at 179 F. 3rd 134. We are bound, as was the district court, to apply the law as interpreted by New York's intermediate appellate courts in the Bliss cases. That's courts. This is one court. And in that case, was there a binding Second Circuit opinion on the question? Or was it the panel that was considering the question in the first? Your Honor, I would likewise, and I know I'm asking Your Honors to do work. I apologize if I'm being disrespectful. I'd ask you to look at Croci. And Your Honor, Croci came down a few months after Gronosco. And what the Croci Second Department court said is the exact quote I read from the Gronosco panel decision, that there was nothing in Croci's complaint about how she lost out in her instruction. And then, Your Honor, it says C.F. Gronosco, meaning Gronosco says, oh, she alleges she lost out terribly after the pandemic. But Croci doesn't. So her complaint is dismissed. So, Judge Solon, it is one decision I'm relying on, except with respect to this court, that decision is consistent with every single New York State court before. But what about, I mean, what do we lose by certifying this to the New York Court of Appeals? It seems to me this is not going to be a one-off. There are a lot of contracts like this kicking around. There are other cases, presumably, that are going to be following. And so, why not just have the New York Court of Appeals resolve this? Your Honor, I'm always thrilled to be here, and I'm thrilled to be in the room, and I'm really enjoyable to be there. But you don't need to do that in this case, because of the half of Gronosco that I respectfully submit your questions didn't deal with, which is the half of Gronosco that said this complaint, the pleadings, allege how, it's Ms. Hall-Landers was the actual student, Gronosco was a parent, how Ms. Hall-Landers transitioned to remote instruction. Go to this complaint. Try to find something where Ms. Beck alleges a fact of how her program suffered. If you're a history major, and your lectures are continued with a 12 to 1 student ratio on remote means, and you're allowed to interact with the faculty on remote means, it's not the same as being on the West Coast at your parent's house trying to do dance by watching recorded tapes. It's simply different. So I would say you don't need to certify the court, to the Court of Appeals. I respectfully submit that the Gronosco panel should have, and I recognize what Judge Sullivan said, that no one asked for it. I think if you read Croci, and again, this court has said it's bound by New York intermediate appellate cases. Croci is directly on point with this case. If you look at the complaint in the Croci St. Joseph's College case, it's just like this complaint. A lot of allegations that St. Joseph's has a wonderful campus over there in Brooklyn, and you'll have a great experience, and you're in New York City. But so your point is really that Croci is not necessarily inconsistent with Gronosco, it's just dealing with facts that are more similar to this case, which makes Gronosco not controlled. Your Honor, when I see a CF Gronosco in the second department's decision, to me that means this case can be distinguished from Gronosco because, and where that CF is, is after the paragraph where the second department says, the amended complaint also fails to articulate in a more than conclusory fashion the manner in which the plaintiff's course of study, which is not stated, was impacted by the suspension of in-person learning. But you're interpreting that. Wouldn't it be best to hear it straight from the horse's mouth? Why not hear it from the New York courts, that that's what they meant by the CF? With respect, Judge, I'm reading word for word what the second department said. No, I understand that, but you're interpreting that. Letter for letter, CF. I think, you know, from my law review days, CF meant this case is different. And I think that's what the second department was saying. This case is different. And the reason it's different is because Ms. Croci didn't allege how her program was compromised. Look at this complaint. It's full of allegations about how wonderful that Manhattan College said New York City is a wonderful place. We have a nice campus. We actually have a campus. That is what's in this complaint. There's nothing in there about following the transition to remote instruction. Ms. Beck didn't receive A, B, C, or D, other than it was remote. So that's what's missing. What about the cost difference between online education and in person? Your Honor, in the record is the declaration of our CFO, Mr. McManus. And we didn't save one nickel. And that's in the summary judgment motion on the fees. Judge Stanton clearly relied on that during the 2019-2020 fiscal year. Manhattan realized a loss. We didn't lay off a faculty member. We didn't lay off a staff member. Those faculty kept teaching the courses. So we didn't save any money. Is it evidence of a different value to the plaintiff as to what she gets from an in person education versus online? In terms of unjust enrichment is where I believe Your Honor's case is going. And the Croce opinion said, unless you say that the college saved a lot of money in the spring of 2020 by transitioning to remote, you can't plead unjust enrichment. And that's what Judge Stanton said. That's what the Croce decision says. And this record after discovery in this case, Judge, there was no proof that Manhattan College saved any money. This isn't the same as founding an online institution and setting up courses in an online way. What we did was pivot in a week from in person to remote to continue Ms. Beck and the other students programs. We didn't save any money. There was no difference in the cost. To the extent there was a difference in the cost, it was increased cost to Manhattan College for equity and good conscience, the standard for unjust enrichment that requires a refund here. And there's no proof Manhattan College benefited financially. So that is, but I would ask the court to revisit what the panel actually said in Renasco. And the second part of what they said is the key distinction between this case and Renasco. You don't need to overrule or go against that panel decision to affirm because of that paragraph and because of what happened in Croce and what the second department said. You don't need to send it to Albany. Although if you do, I'd be glad to go. Thank you. If we do, we'll be sure to tell them what you just said that you prefer it here. It's a nice courtroom too. It's an honor. Thank you. It's always a thrill and rebuttal. Please go ahead. Thank you very much. Basically what we have here is the lower court placing itself as the fact finder, the jury, and deciding all issues. So the lower court by definition has decided that no reasonable juror could ever come up with the fact that this is an implied contract. No reasonable juror could ever hear the facts of this case and decide there's unjust enrichment. The court has substituted itself and ruled in this case. I think it's properly a jury question. I think it needs to be sent back down so the facts can develop. There's a dismissal and then there's summary judgment. The dismissal is whether there's facts that have been pleaded that could support a claim, a plausible claim. So I think Mr. Fellows' point is that this implied contract is different than the implied contract in Reynasco. And he points out a number of reasons. And I think his argument is that what's alleged in this complaint tracks much more closely the implied contract alleged in Croce. So I guess I'd like to hear you respond to that. There are differences. There are subtle differences. But there is certainly more alleged in Reynasco, it appears, than here. Absolutely, Judge. And I think counsel is correct. These are different cases. They're different cases on the facts. And I think each one of the college cases turns on the facts. And the facts that we have here in this case, I don't think it matters what type of class, what chosen course of study that you had. Whether you were doing dancing classes, for example, versus studying philosophy. What if your major was philosophy? Could you do the same thing at home? You're going to get the same grade. You're going to get the same letter grade. You've got pass, fail in this situation. But you get the same grade and you get your course credits should you pass the class. But is the class the same? I mean, here we have the tout that you're going to have the New York City as your classroom. You're going to small classroom, big opportunity. Learn by doing. Manhattan, you have a chance to learn to come alive through a variety of immersive, hands-on experiences in New York City and beyond. It didn't say the dance classes are going to have a New York City experience. We're going to dance down Broadway. It didn't say that at all. It said every student is going to be entitled to this on-campus experience. And to say that it's the same thing when you just go home and you sit there in front of your laptop and you don't go to campus, you don't experience the quad that they tout, the giant quad that's in the middle of the city. You don't get the interaction. So it's not what the brochure says, but what the particular student is studying. So any student that's studying dance or voice, maybe they're entitled to a refund versus a student who's just studying English, for example. That's my point. I don't think there's a distinction. I think the students have a little bit stronger argument that, yeah, okay, I can't do the dance class and I can't hold the hand of my partner in the classroom. But I don't think it's any different for a philosophy major who's sitting there and benefiting by the camaraderie that happens before class, the camaraderie that happens after class, the camaraderie that happens on the exact campus that they tout and say, come here because of our express New York City experience. Our campus is wonderful. You get to meet, have this interaction. It's not the same. It's just not the same. And I don't think it matters whether or not you have a dance class that requires a hand touching versus a philosophy class that requires just an intellectual exercise. I think they're both the same thing. And for those reasons, your honors, we think that the decisions by the lower court should be reversed in the case we're making. Thank you both. We will reserve decision, but interesting case we'll argue.